# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:15-CV-00246-GCM

| | |
|---|---|
| WINTER PARK IMPORTS, INC., <br><br> **Plaintiffs,** <br><br> v. <br><br> RK MOTORS, LLC <br> RKM COLLECTOR CAR ACUTIONS, LLC, <br><br> **Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on Defendant RKM Collector Car Auctions, LLC's Motion to Dismiss for Failure to State a Claim, filed July 24, 2015 (Doc. No. 7) and its Memorandum in Support (Doc. No. 8). Plaintiff's response was due on August 10, 2015, and it did not file a response or request an extension of time. For the reasons set forth below, Defendant RKM Auctions' Motion is **GRANTED.**

## I. BACKGROUND

Plaintiff Winter Park Imports, Inc. ("Winter Park") filed its complaint in this Court on June 6, 2015, alleging claims against Defendants, RK Motors, LLC ("RK Motors") and RKM Collector Car Auctions, LLC's ("RKM Auctions"). (Doc. No. 1) On July 24, 2015, Defendant RK Motors filed its answer (Doc. No. 6) and Defendant RKM Auctions filed the instant Motion to Dismiss, asking the Court to dismiss all claims against it pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Doc. No. 7)

In its complaint, Plaintiff alleges claims for various violations of North Carolina law. (Doc. No. 1) Plaintiff's claims stem from its purchase of a car from RK Motors as an absentee

bidder at an auction organized by RKM Auctions. (Compl. ¶ 28, 37) The Complaint alleges that RK Motors is the sole member and manager of RKM Auctions. (Compl. ¶¶ 10-11) It further claims that Joe Carroll, the President and CEO of RK Motors, is the registered agent for RKM Auctions. (Compl. ¶¶ 15-16)

The complaint alleges that RKM Auctions maintains a website that assures prospective buyers that it has "integrated the MCG Expert Panel as part of [its] auction events." (Compl. ¶ 21) The website further explains:

> Experts . . . will be on hand to assist buyers with any and all questions regarding vehicles consigned to our auction, at the event. Our commitment to our buyers . . . is to accurately present each consigned vehicle to the best of our ability. For the new hobbyist, the presence of the MCG Expert Panel at our auction events is full coverage insurance that the fake and misrepresented cars will steer clear of our sales. (Compl. ¶ 21)

A copy of this webpage is attached to the Complaint. (Compl. Exh. C)

Plaintiff located the disputed car—purportedly a "restored '1967 Ford Mustang GT,' Vehicle Identification Number [("VIN")] 7T02A117473"—on RKM Auctions' list of cars that would be for sale at the company's first public auction. (Compl. ¶¶ 24-26) RK Motors was named as the owner and seller of the car. (Compl. ¶¶ 15-16, 28) Plaintiff notified RKM Auctions that it wished to participate in the auction as an absentee bidder, and it executed an Absentee Bidder Agreement in order to do so. (Compl. ¶ 34, Exh. F) The Agreement contains a lengthy waiver provision, which provides, in part:

> [RKM Auctions] makes no representations or warranties and expresses no opinions whatsoever concerning any Lot or Lots, and . . . expressly disclaims any and all representations, warranties, and opinions, express or implied, concerning any and all Lots, including without limitation the warranties of merchantability or fitness for a particular purpose, and any representations, warranties, or opinions given or made by any other parties. . . . [RKM Auctions] has no duty to Buyer . . . to research Lots or verify any Vehicle Information for the Benefit of Buyer . . . . Buyer hereby waives and forever releases [RKM Auctions and its officers] from and against any and all

claims, demands, liability, damages or expenses of any kind arising in whole or in part out of or related to the Lot. . . .

Notwithstanding the foregoing, Buyer hereby acknowledges and agrees that [RKM Auctions] is merely performing an auction service and does not and shall not at any time own any of the Lots and makes no representations or warranties with respect thereto, and as such, any litigation brought by Buyer concerning any Lot(s) shall be against the Seller only, and Buyer hereby irrevocably waives and releases [RKM Auctions] from any and all liability whatsoever in connection therewith. (Compl. Exh. F, ¶¶ 6-7)

At the auction, Plaintiff purchased the car for $164,920. (Compl. ¶ 37) After purchasing the car, Plaintiff received a copy of the title documents, which included the same VIN that had been included in the auction listing. (Compl. ¶ 38) However, when the car arrived at Plaintiff's place of business in Florida, an inspection quickly revealed that the car had no VIN at all. (Compl. ¶ 41) As a result, it is impossible for Plaintiff to verify that any of the car's parts came from a 1967 Mustang. (Compl. ¶¶ 42-44) Plaintiff contacted both Defendants seeking to revoke the purchase contract and each refused. (Compl. ¶ 49)

The Complaint alleges eight counts against RK Motors and RKM Auctions: (1) revocation of acceptance, pursuant to N.C. Gen. Stat. § 25-2-608; (2) breach of contract; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for a particular purpose; (5) negligent or grossly negligent misrepresentation; (6) fraudulent concealment; (7) unfair and deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1(b); and (8) civil conspiracy. (Doc. No. 1)

In its Motion to Dismiss, RKM Auctions argues that certain clauses contained in the Absentee Bidder Agreement insulate it from liability and prevent Plaintiff from stating a claim on which relief can be granted. (Doc. No. 8) Defendant argues that Plaintiff cannot state a claim for revocation of acceptance and breach of contract as a matter of law because the Bidder agreement expressly limited RKM Auctions' duties. (Memorandum in Support at 4) Pursuant to

the Absentee Bidder Agreement, RKM Auctions was obligated to transfer the purchased goods to Plaintiff in "AS IS, WHERE IS" condition. (Memorandum in Support at 4; Compl. Exh. F, ¶ 2) Defendant argues that it had no obligation to inspect the car, and no obligation to allow revocation of the agreement. (Memorandum in Support at 4)

Next, Defendant argues that under North Carolina law, Plaintiff cannot state a claim for breach of the implied warranty of merchantability or the implied warranty of fitness for a particular purpose. (Memorandum in Support at 4) Defendant asserts that, pursuant to N.C. Gen. Stat. § 25-2-314, which governs an implied warranty of merchantability, and N.C. Gen. Stat. § 25-2-315, which relates to implied warranties of fitness for a particular purpose, only the seller is liable for breaches of these warranties. (Memorandum in Support at 4-5) The Bidder Agreement, Defendant argues, undisputedly establishes that RK Motors was the seller in this transaction. (Memorandum in Support at 5).

As for Plaintiff's next three claims, Defendant argues that contractual language defeats claims for negligent misrepresentation, fraudulent concealment, and unfair trade practices when that language stipulates that a seller intends to make no representations. (Memorandum in Support at 5-7) RKM Auctions also claims that there is an additional ground on which to dismiss the fraudulent concealment claim. It suggests the Complaint does not contain sufficient facts to suggest RKM Auctions failed to disclose a known material fact in violation of a duty to disclose that fact. (*Id.* at 6) Defendant points to language in the Bidder Agreement, stating the "Buyer's decision to bid on any Lot and the amounts of such bid are made exclusively in reliance upon Buyer's research" and "[RKM Auctions] has no duty to Buyer or any other party(ies) to research Lots or verify any Vehicle Information for the benefit of Buyer." (*Id.* at 6-7; Compl.

Exh F., ¶ 6) Defendant argues that this language conclusively establishes that RKM Auctions had no duty to disclose any material facts to Plaintiff. (Memorandum in Support at 6)

Lastly, Defendant argues that Plaintiff's civil conspiracy claim is insufficiently pled because the complaint does not contain facts that could support an inference of an agreement between RKM Auctions and RK Motors. (Memorandum in Support at 8) In the alternative, it posits that language in the Bidder Agreement—stating that "Buyer irrevocably waives and releases [RKM Auctions] from any and all liability"—insulates it from liability for conspiracy. (*Id.*; Compl. Exh F., ¶ 7)

## II.LEGAL STANDARD

When faced with a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must "accept as true all well-pleaded allegations and . . . view the complaint in a light most favorable to the plaintiff." *Mylan Labs, Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court "assume[s] the[] veracity" of these factual allegations, and "determine[s] whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Thus, a "complaint may proceed even if it strikes a savvy judge that actual proof of [the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotation marks and citation omitted). However, the court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Eastern Shore Mkts., Inc. v. J.D. Assocs. LLP*, 213 F.3d 175, 180 (4th Cir. 2000).

## III.DISCUSSION

### A. Revocation of acceptance

Revocation of acceptance is governed by N.C. Gen. Stat. § 25-2-608, which provides that a buyer is entitled to revoke his acceptance of a lot or commercial good whose value is

5

substantially impaired by its nonconformity if he accepted the item "without discovery of such nonconformity" and "his acceptance was reasonably induced either by the difficulty of discovery before acceptance or by the seller's assurances." *Id.* § 25-2-608(1)(b). The statute further provides that revocation must occur within a reasonable time after the buyer discovers or should have discovered the nonconformity and before any substantial change in condition occurs. *Id.* § 25-2-608(2). "It is not effective until the buyer notifies the seller of it." *Id.* The Supreme Court of North Carolina has explained that "[t]he manner in which the statutes governing acceptance and revocation of acceptance use the terms 'buyer' and 'seller' indicates that the existence of a buyer-seller relationship is a prerequisite to the buyer's ability to revoke acceptance." *Alberti v. Manufactured Homes, Inc.*, 407 S.E. 2d 819, 823 (N.C. 1991). North Carolina's Uniform Commercial Code defines a "seller" as "a person who sells or contracts to sell goods." N.C. Gen. Stat. Ann. § 25-2-103(1)(d).

The Court finds that the revocation of acceptance and breach of contract claims against RKM Auctions should be dismissed. The complaint specifically alleges that the owner and seller of the car was RK Motors, not RKM Auctions. (Compl. ¶ 28) The exhibits attached to the complaint similarly cannot support the inference that RKM Auctions was the seller. The Certificate of Title lists RK Motors as the seller, its website listed the car for sale, and the Bidder Agreement uses the term "Seller" to refer to the car's underlying owner—in this case RK Motors. (Compl. Exh. D, E, F) Moreover, Plaintiff has failed to file a response to Defendant's Motion and thus it has not advanced any argument that its Complaint sufficiently establishes that RKM Auctions was the seller, or that an agency relationship existed between the two entities. Looking to the four corners of the complaint, including its exhibits, the Court cannot find facts to

support the claim that RKM Auctions was in a buyer-seller relationship with Plaintiff. Thus, its revocation of acceptance claim is insufficient as a matter of law.

### B. Breach of contract

Breach of contract has two elements under North Carolina law: (1) existence of a valid contract and (2) breach of the terms of that contract." *Johnson v. Colonial Life & Acc. Ins. Co.*, 618 S.E.2d 867, 870 (N.C. Ct. App. 2005) (quoting *Poor v. Hill,* 530 S.E.2d 838, 843 (N.C. Ct. App. 2000)).

The complaint similarly fails to establish that RKM Auctions breached an obligation that it owed to Plaintiff under the terms of the contract. RKM Auctions argues that its only obligation was to "ensure each vehicle purchased . . . is transferred in 'AS IS, WHERE IS' condition." (Compl. Exh. F) It also points out that the contract specifies that RKM Auctions "ha[d] no duty to Buyer . . . to research Lots or verify any Vehicle Information for the benefit of Buyer." (*Id.*) These terms seem to facially rebut Plaintiff's allegations of contract breach, and again, Plaintiff has declined the opportunity to argue otherwise before this Court. Because the Court has reviewed the remainder of the contract terms and agrees with Defendant's characterization of its obligations, Plaintiff's breach of contract claim against RKM Auctions will also be dismissed.

### C. Warranties

Section 25-2-314 of the North Carolina General Statutes governs implied warranties of merchantability and provides that "unless excluded or modified . . . a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Pursuant to § 25-2-316(2), this warranty may be excluded by language that "mention[s] merchantability and in the case of a writing must be conspicuous." It may also

be excluded by "expressions like 'as is,' 'with all faults' or other language which in common understanding calls the buyer's attention to the exclusion of warranties and makes plain that there is no implied warranty." *Id.* § 25-2-316(3)

Similarly, § 25-2-315 sets out North Carolina law on implied warranties of fitness for a particular purpose. Pursuant to that section, "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is unless excluded or modified . . . an implied warranty that the goods shall be fit for such purpose." *Id.* Language modifying or excluding the warranty is permitted if it is in "writing and conspicuous." *Id.* § 25-2-316(2). The statute also gives a specific example of terms sufficient to exclude an implied warranty of fitness for a particular purpose, clarifying that parties may use the phrase: "There are no warranties which extend beyond the description on the face thereof." *Id.* Moreover, like the implied warranty of merchantability, the warranty of fitness for a particular purpose can also be excluded using "as is" or "with all faults" language. *Id.* § 25-2-316(3).

The contract that Plaintiff attached to its complaint includes language sufficient to exclude both of the implied warranties under North Carolina law. Not only does the contract provide that RKM Auctions' duty was to provide the car in "as is" condition—which is sufficient to exclude all implied warranties—it also states that Defendant "makes no representations or warranties . . . including without limitation the warranties of merchantability or fitness for a particular purpose." (Compl. Exh. F) Plaintiff addresses these clauses in its complaint, saying "[a]lthough [RKM Auctions] asserts that the Bidder Agreement disclaimed any representations and warranties it had made, a review of that document shows no disclaimers in compliance with or enforceable under North Carolina law." (Compl. ¶ 35) However, the contract clearly includes

8

the type of language prescribed by the relevant North Carolina statutes, and this Court is not required on a motion to dismiss to take Plaintiff's legal conclusions as true. *See Eastern Shore Mkts., Inc.*, 213 F.3d at 180. Moreover, to the extent that Plaintiff located case law in support of its position, it was free to present that information a response to Defendant's Motion. Absent such a showing, the Court will dismiss Plaintiff's claims for breach of implied warranty of merchantability and implied warranty of fitness for a particular purpose.

### D. Negligent misrepresentation

"The tort of negligent misrepresentation occurs when (1) a party justifiably relies, (2) to his detriment, (3) on information prepared without reasonable care, (4) by one who owed the relying party a duty of care." *Brinkman v. Barrett Kays & Associates, P.A.*, 575 S.E.2d 40, 43-44 (N.C. Ct. App. 2003) (alteration and citation omitted). North Carolina courts have cautioned that "issues of negligence are ordinarily not susceptible of summary adjudication either for or against the claimant, but should be resolved by trial in the ordinary manner." *Id.* at 42 (alterations adopted) (quoting *Page v. Sloan*, 190 S.E.2d 189, 194 (1972)). Nevertheless, claims should be dismissed where the plaintiff fails to allege facts that suggest any duty owed or breached by the defendant. *Bob Timberlake Collection, Inc. v. Edwards*, 626 S.E.2d 315, 322 (N.C. Ct. App. 2006).

Here, Plaintiff has failed to allege facts that could support a finding that RKM Auctions had a duty to inspect the car and disclose the fact that it had no VIN to Plaintiff. Rather, the Bidder Agreement specifically informed Plaintiff that RKM Auctions had "no duty . . . to research Lots or verify any Vehicle Information for the benefit of Buyer." (Compl. Exh. F) Moreover, under North Carolina law, auctioneers do not incur fiduciary duties toward bidders merely by contracting with them to deal at arms' length. *Lord of Shalford v. Shelley's Jewelry,*

9

*Inc.*, 127 F. Supp. 2d 779, 785 (W.D.N.C. 2000), *aff'd*, 18 F. App'x 147 (4th Cir. 2001). They also do not owe a duty of professional care under North Carolina's malpractice statutes. *Id.* at 786-87. Lastly, the Court has reviewed section 85B of the North Carolina General Statutes, which governs Auctions and Auctioneers. No provision of any subsection purports to create a duty on auctioneers to inspect goods and disclose material facts to bidders. For these reasons, the complaint does not contain sufficient facts to suggest RKM Auctions owed any duty to Plaintiff, and the negligent misrepresentation claim will be dismissed.

### E. Fraudulent concealment

Under North Carolina law, a claim of fraudulent concealment consists of five elements: (1) concealment of a material fact, (2) materially calculated to deceive, (3) with the intent to deceive; (4) the plaintiff was actually deceived; and (5) the plaintiff suffered damages as a result. *Bob Timberlake Collection, Inc.*, 626 S.E.2d at 321. It must be pled with particularity. *Id.* This requirement is met if the plaintiff alleges the time, place, and content of the fraudulent representation, as well as the speaker and what they obtained as a consequence of the fraudulent statements. *Id.* A claim of fraudulent concealment may be based either on an affirmative misrepresentation or "a failure to disclose a material fact relating to a transaction which the parties had a duty to disclose." *Hardin v. KCS Int'l, Inc.*, 682 S.E.2d 726, 733 (N.C. Ct. App. 2009) (citation omitted). A duty to disclose arises in three situations: (1) there is a fiduciary relationship between the parties; (2) there is no fiduciary relationship but one "party has taken affirmative steps to conceal material facts from the other"; and (3) "there is no fiduciary relationship and one party has knowledge of a latent defect in the subject matter of the negotiations about which the other party is both ignorant and unable to discover through

10

reasonable diligence." *Id.* (internal quotation marks omitted) (quoting *Sidden v. Mailman*, 529 S.E.2d 266, 270-71 (N.C. Ct. App. 2000)).

The complaint alleges that RKM Auctions and RK Motors were operated by the same person or persons, and, as a result, RKM Auctions knew that the car had no VIN. (Compl. ¶¶ 12-16, 43) Moreover it alleges that Plaintiff did not attend the auction—a fact RKM Auctions knew through the Absentee Bidder Agreement—and that its first opportunity to inspect the vehicle was after purchase. (Compl. ¶¶ 34, 41) In other words, the complaint adequately alleges that RKM Auctions had knowledge of a latent defect in the car, and it further knew that Plaintiff was ignorant of that defect and unable to inspect the car prior to executing the Absentee Bidder Agreement. Taking these allegations as true, it appears at first glance that Plaintiff has plausibly alleged fraudulent concealment.

However, the general waiver of liability Absentee Bidder Agreement which states that "Buyer irrevocably waives and releases all [RKM Auctions] Parties from any and all liability whatsoever in connection with" the purchase of any car from a seller at auction, is relevant to this Court's analysis. (Compl. Exh. F, ¶ 7) Under North Carolina law, "[a] release is subject to avoidance by a showing that its execution resulted from fraud." *Talton v. Mac Tools, Inc.*, 453 S.E.2d 563, 565 (N.C. Ct. App. 1995) (quoting *Cunningham v. Brown*, 276 S.E.2d 718, 723 (N.C. Ct. App. 1981)). At the same time, the courts recognize that a sufficiently broad release claim can preclude recovery on a fraudulent concealment claim. *See id.* ("Since this language was broad enough to cover all possible causes of action, whether or not the possible claims are all known, plaintiffs cannot rely on their ignorance of facts giving rise to a claim for fraud as a basis for avoiding the release."); *see also Hardin v. KCS Int'l, Inc.*, 682 S.E.2d 726, 735 (N.C. Ct. App. 2009) (granting summary judgment on fraudulent concealment claim on grounds that "a

comprehensively phrased general release, in the absence of proof of contrary intent, is usually held to discharge all claims between the parties" (alterations adopted) (quoting *Koch v. Bell, Lewis & Assocs., Inc.*, 627 S.E.2d 636, 639 (N.C. Ct. App. 2006))); *Fin. Servs. of Raleigh, Inc. v. Barefoot*, 594 S.E.2d 37, 43 (N.C. Ct. App. 2004) ("[W]hen the parties stated that they were releasing 'all claims of any kind,' we must construe the release to mean precisely that: an intent to release all claims of any kind in existence.").

Here, Plaintiff signed the Absentee Bidder Agreement and assented to its broad waiver provisions. Plaintiff has also declined the opportunity to argue to this Court that RKM Auctions engaged in "fraud in the procurement of the release," as opposed to "fraud in in the underlying transaction to which the release relates." *See Talton*, 453 S.E.2d at 565. Only the former would be sufficient to overcome the release, and, as the Court reads the Complaint, Plaintiff alleges the latter. Indeed, the Complaint does not allege that Plaintiff was "defrauded into signing the release," *see id.*, but rather that RKM Auctions "concealed the material fact that the Car was not verifiable as a 1967 Ford Mustang GT." (Compl. ¶ 79) Moreover, although many cases disposing of claims based on waivers proceed to summary judgment, the interpretation of an unambiguous contractual provision is a question of law for the Court to decide. *Hagler v. Hagler*, 354 S.E.2d 228, 234 (N.C. 1987). Because the Court can discern no ambiguity in the Absentee Bidder Agreement's waiver provision, and Plaintiff has not disputed Defendant's characterization of its breadth, the fraudulent concealment claim will also be dismissed.

### F. Unfair or deceptive trade practices

"To state a claim for unfair and/or deceptive trade practices, the plaintiffs must allege that (1) the defendants committed an unfair or deceptive act or practice, or an unfair method of competition, (2) in or affecting commerce, (3) which proximately caused actual injury to the

plaintiffs or to the plaintiffs' business." *Birtha v. Stonemor*, LLC, 727 S.E.2d 1, 10 (N.C. Ct. App. 2012) (quoting *Walker v. Sloan*, 529 S.E.2d 236, 243 (N.C. Ct. App. 2000)); *see* N.C. Gen. Stat. § 75-1.1. "A [trade] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." *Walker*, 529 S.E.2d at 243 (citation omitted) (alteration in original). By contrast, "[a]cts are deceptive when they 'possess the tendency or capacity to mislead, or create the likelihood of deception.'" *Belk, Inc. v. Meyer Corp., U.S.*, 679 F.3d 146, 164 (4th Cir. 2012) (alterations adopted and emphasis omitted) (quoting *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 903 (4th Cir. 1996)). Conduct need not be both unfair and deceptive to be within the scope of the statute, and the defendant's good faith and intent are relevant to the courts' analysis. *Id.*

A plaintiff typically states a claim for unfair or deceptive trade practices by showing both a breach of a contract and "substantial aggravating circumstances." *See Birtha*, 727 S.E.2d at 10; *Suntrust Bank v. Bryant/Sutphin Properties, LLC*, 732 S.E.2d 594, 599 (N.C. Ct. App. 2012). "The type of conduct that has been found sufficient to constitute a substantial aggravating factor has generally involved forged documents, lies, and fraudulent inducements." *2 Hounds Design, Inc. v. Brezinski*, No. 3:13-CV-101-RJC-DCK, 2014 WL 4407015, at *10 (W.D.N.C. Sept. 8, 2014). However, a plaintiff can also state a claim that is distinct from a breach of contract claim. *Suntrust Bank*, 732 S.E.2d at 599. Whether a defendant engaged in the allegedly unfair practice is a question of fact, but whether the action itself violates the statute is a question of law. *Id.* at 598.

As an initial matter, Plaintiff has alleged sufficient facts to support a claim for deceptive trade practices separate from any breach of contract, even though it has not alleged sufficient

13

facts to make out a claim for breach of contract. Even if RKM Auctions expressly disavowed making representations in the Absentee Bidder Agreement, the Complaint also alleges that Defendant induced buyers to participate in its auctions with assurances that it took steps to exclude "fake and misrepresented cars," while in fact it conspired with RK Motors to use the auctions to sell precisely that type of car. (Compl. ¶ 21, Exh. C) These allegations would ordinarily be sufficient to survive a motion to dismiss. However, as with Plaintiff's fraudulent concealment claim, the waiver in the Absentee Bidder Agreement precludes recovery on this Count. *See Fin. Servs. of Raleigh, Inc.*, 594 S.E.2d at 42-43 (holding waiver of that the parties "release . . . the other party . . . from any claims . . . of whatever sort" barred unfair or deceptive trade practices claim). Accordingly, Plaintiff's unfair or deceptive trade practices claim will be dismissed.

### G. Civil conspiracy

North Carolina does not recognize a separate civil action for conspiracy. *Dove v. Harvey*, 608 S.E.2d 798, 800 (N.C. Ct. App. 2005). Rather, "recovery must be on the basis of sufficiently alleged wrongful overt acts. The charge of conspiracy itself does nothing more than associate the defendants together and perhaps liberalize the rules of evidence to the extent that under proper circumstances the acts and conduct of one might be admissible against all." *Id.* (quoting *Fox v. Wilson*, 300, 354 S.E.2d 737, 743 (N.C. Ct. App. 1987)). In order to state a claim for civil conspiracy, a complaint must allege, at minimum, "a conspiracy, wrongful acts done by certain of the alleged conspirators, and injury." *Norman v. Nash Johnson & Sons' Farms, Inc.*, 537 S.E.2d 248, 265 (N.C. Ct. App. 2000) (quoting *Henry v. Deen*, 310 S.E.2d 326, 334 (N.C. 1984)). "[L]iability for conspiracy may be established by circumstantial evidence . . . ." *Henderson v. LeBauer*, 399 S.E.2d 142, 145 (N.C. Ct. App. 1991).

Defendant's motion to dismiss this claim will also be granted. Plaintiff has plausibly alleged that RKM Auctions had an agreement with RK Motors to sell the car at auction without revealing known latent defects. (Compl. ¶ 14, 43, 89) However, all of its other claims have been dismissed, and thus there is no remaining wrongdoing on which to base a claim for civil conspiracy. Moreover, the civil conspiracy claim, like the previous two claims, falls within the waiver and release contained in the Absentee Bidder Agreement.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim on which relief can be granted, as to Defendant RKM Auctions. It is therefore ordered that Defendant's Motion to Dismiss will be **GRANTED.**

**SO ORDERED.**

Signed: November 5, 2015

Graham C. Mullen
United States District Judge